Filed 3/30/23

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION FOUR

| | |
|---|---|
| MILLION SEIFU et al., | B301774 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC712959) |
| v. | |
| LYFT, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Susan Bryant-Deason, Judge. Affirmed in part, reversed in part with directions.

Horvitz & Levy, Andrea L. Russi, Peder Batalden, Felix Shafir; Keker, Van Nest & Peters, R. James Slaughter, Jo W. Golub, Erin E. Meyer and Morgan E. Sharma for Defendant and Appellant.

Lichten & Liss-Riordan, Shannon Liss-Riordan for Plaintiff and Respondent Million Seifu.

Respondent Million Seifu is a former driver for appellant Lyft, Inc.  In 2018, he filed suit against Lyft under the Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.).[1]  He alleged that Lyft misclassified him and other drivers as independent contractors rather than employees, thereby violating multiple provisions of the Labor Code.  Lyft moved to compel arbitration based on the arbitration provision in the "Terms of Service" (TOS) that it required its drivers to accept in order to offer rides through Lyft's smartphone application.

The trial court denied the motion, finding the PAGA waiver in the arbitration provision unenforceable under then-controlling California law.  Lyft appealed, and in June 2021 we affirmed the denial of Lyft's motion to compel arbitration.

Lyft petitioned the United States Supreme Court for a writ of certiorari.  In June 2022, the Court granted Lyft's petition, vacated the judgment, and remanded the case for further consideration in light of *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. ___ [142 S.Ct. 1906, 213 L.Ed.2d 179] (*Viking River*).  We recalled the remittitur, vacated our prior decision, and requested supplemental briefing from the parties on the application of *Viking River* to this case.

Seifu concedes that under *Viking River* his claim for civil penalties based on alleged Labor Code violations he *personally* suffered (his individual PAGA claim) is subject to arbitration.  We agree, and therefore reverse the denial of that portion of Lyft's motion to compel arbitration.

The crux of the parties' dispute here is the fate of Seifu's remaining claims for civil penalties based on alleged Labor Code violations suffered by *other employees* (his non-individual PAGA claims).  Lyft argues that Seifu lacks standing to litigate the non-individual claims once his individual claims are sent to arbitration, and the former claims therefore must be dismissed.  Seifu counters that, as a matter of state law, he retains standing to pursue the non-individual PAGA claims in court.

---

[1]     All further statutory references are to the Labor Code unless otherwise indicated.

We conclude that we are not bound by the analysis of PAGA standing set forth in *Viking River*. As Justice Sotomayor recognized in her concurring opinion, PAGA standing is a matter of state law that must be decided by California courts. Until we have guidance from the California Supreme Court, our review of PAGA and relevant state decisional authority leads us to conclude that a plaintiff is not stripped of standing to pursue non-individual PAGA claims simply because his or her individual PAGA claim is compelled to arbitration.

We therefore reverse in part and affirm in part the trial court's order denying Lyft's motion to compel arbitration. We remand the matter to the trial court with directions to: (1) enter an order compelling Seifu to arbitrate his individual PAGA claim; and (2) conduct further proceedings regarding Seifu's non-individual claims consistent with this opinion.

## FACTUAL AND PROCEDURAL HISTORY

Lyft utilizes a smartphone application (app) that connects drivers with riders seeking transportation services. In order to use the Lyft technology platform and offer rides through the app, drivers must agree to the TOS, which states that it "contains provisions that govern how claims you and Lyft have against each other can be brought. . . . These provisions will, with limited exception, require you to submit claims you have against Lyft to binding and final arbitration on an individual basis, not as a plaintiff or class member in any class, group, representative action, or proceeding." (Capitalization omitted.)

The arbitration provision in the TOS provided, "You and Lyft mutually agree to waive our respective rights to resolution of disputes in a court of law by a judge or jury and agree to resolve any dispute by arbitration. . . . This agreement to arbitrate ('Arbitration Agreement') is governed by the Federal Arbitration Act and survives after the Agreement terminates or your relationship with Lyft ends. . . . Except as expressly provided . . . [¶] . . . all disputes and claims between us . . . shall be exclusively resolved by binding arbitration solely between you and Lyft." (Capitalization omitted.) The agreement further stated, "This Arbitration Agreement is intended to require arbitration of every claim or dispute that can lawfully be arbitrated, except

for those claims and disputes which by the terms of this Arbitration Agreement are expressly excluded from the requirement to arbitrate."

The arbitration provision also included a "Representative PAGA Waiver" stating, "Notwithstanding any other provision of this Agreement or the Arbitration Agreement, to the fullest extent permitted by law: (1) you and Lyft agree not to bring a representative action on behalf of others under the Private Attorneys General Act of 2004 (PAGA), California Labor Code § 2698 et seq., in any court or in arbitration, and (2) for any claim brought on a private attorney general basis, including under the California PAGA, both you and Lyft agree that any such dispute shall be resolved in arbitration on an individual basis only (i.e., to resolve whether you have personally been aggrieved or subject to any violations of law), and that such an action may not be used to resolve the claims or rights of other individuals in a single or collective proceeding (i.e., to resolve whether other individuals have been aggrieved or subject to any violations of law)."

Drivers who did not wish to be bound by the arbitration provision could opt out in the 30-day period following their acceptance of the TOS. Those who did not exercise this option during that period were bound by the arbitration provision.

Lyft updated the TOS periodically and required drivers to agree to the updated terms in order to continue offering rides through the Lyft platform. Seifu agreed to the updated TOS in July 2017 and April 2018; he did not opt out of the arbitration provision.

Seifu filed a complaint against Lyft in July 2018, alleging a single PAGA claim on behalf of the state of California and other similarly situated individuals who worked as drivers for Lyft in California.[2] He alleged that Lyft willfully misclassified its drivers as independent contractors, resulting in numerous Labor Code violations. Seifu sought civil penalties under PAGA.

---

[2] Seifu later amended his complaint to add three other drivers as named plaintiffs, as well as additional claims. This appeal concerns only Seifu's PAGA claim, the thirteenth cause of action in the operative Third Amended Complaint.

Lyft petitioned to compel arbitration of Seifu's PAGA claim and stay proceedings in the trial court pending arbitration, arguing that the PAGA waiver in the TOS was enforceable. Seifu opposed the petition to compel arbitration. He argued that the PAGA waiver was unenforceable under California law, relying on *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*).

Applying *Iskanian*, the trial court found that the PAGA waiver was unenforceable and therefore denied Lyft's petition to compel arbitration. Lyft appealed.

In our prior opinion, a different panel of this court affirmed the trial court's decision. (*Seifu v. Lyft, Inc.* (June 1, 2021), B301774 [nonpub. opn.].) We concluded that pursuant to *Iskanian, supra*, 59 Cal.4th at pp. 383-384, "an employee's right to bring a PAGA action is unwaivable," and thus "where . . . an employment agreement compels the waiver of representative claims under the PAGA, it is contrary to public policy and unenforceable as a matter of state law."

In June 2022, the United States Supreme Court decided *Viking River,* abrogating *Iskanian* in part and holding that an employer could enforce an agreement calling for arbitration of individual PAGA claims. That same month, the United States Supreme Court granted Lyft's petition for writ of certiorari, vacated this court's judgment, and remanded the case for further consideration in light of *Viking River.* We recalled the remittitur issued September 13, 2021, vacated our prior opinion, and directed the parties to file supplemental briefs addressing the effect of *Viking River* on the issues presented in this appeal. Both parties timely filed supplemental briefs.

## DISCUSSION

### I.  *Governing Law*

#### A.  **Standard of Review**

Where, as here, the trial court's order denying a motion to compel arbitration "rests solely on a decision of law," we review that decision de novo. (*Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425.)

#### B.  **PAGA and *Viking River***

5

"California's Labor Code contains a number of provisions designed to protect the health, safety, and compensation of workers. Employers who violate these statutes may be sued by employees for damages or *statutory* penalties. [Citations.] . . . . Several Labor Code statutes provide for additional *civil* penalties, generally paid to the state unless otherwise provided. [Citation.] Before PAGA's enactment, only the state could sue for civil penalties." (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 80 (*Kim*), citing *Iskanian, supra,* 59 Cal.4th at p. 378.) The Legislature enacted PAGA to allow aggrieved employees to act as private attorneys general and recover civil penalties for Labor Code violations. (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 980-981 (*Arias*); *Villacres v. ABM Industries Inc.* (2010) 189 Cal.App.4th 562, 578 (*Villacres*).) The Legislature's declared purpose in enacting PAGA was "to supplement enforcement actions by public agencies, which lack adequate resources to bring all such actions themselves." (*Arias, supra*, 46 Cal.4th at p. 986.)

PAGA deputizes an "aggrieved" employee to bring a lawsuit "on behalf of himself or herself and other current or former employees" to recover civil penalties for Labor Code violations that would otherwise be assessed and collected by the state. (§ 2699, subd. (a); *Kim, supra*, 9 Cal.5th at p. 81.) An "aggrieved employee" for purposes of bringing a PAGA claim is defined under the statute as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." (§ 2699, subd. (c); see also *Kim, supra*, 9 Cal.5th at p. 82.) Although an aggrieved employee is the named plaintiff in a PAGA action, an employee suing under PAGA "'does so as the proxy or agent of the state's labor law enforcement agencies.'" (*Kim, supra*, 9 Cal.5th at p. 81, quoting *Arias, supra*, 46 Cal.4th at p. 986.) Thus, "[e]very PAGA claim is 'a dispute between an employer and the *state*,' [citations]" and "[r]elief under PAGA is designed primarily to benefit the general public, not the party bringing the action. [Citations.]" (*Kim, supra*, 9 Cal.5th at p. 81.)

In *Iskanian*, the California Supreme Court held that "an employee's right to bring a PAGA action is unwaivable." (*Iskanian, supra*, 59 Cal.4th at p. 383.) The court rejected the employer's argument that the arbitration agreement was enforceable because it allowed an individual PAGA claim,

barring only "representative" (i.e., non-individual) PAGA claims, concluding that an agreement waiving an employee's right to bring representative PAGA claims was "contrary to public policy and unenforceable as a matter of state law." (*Id*. at p. 384.)

In June 2022, the Supreme Court decided *Viking River*, addressing the extent to which the Federal Arbitration Act (FAA) preempts the *Iskanian* rule barring PAGA waivers. The *Viking River* court explained that PAGA claims are "representative" in two ways: first, all PAGA claims are "representative" because a plaintiff brings a PAGA claim as an agent or proxy for the state. (*Viking River, supra*, 142 S.Ct. at p. 1916.) Second, some PAGA claims are "representative" because they are brought by employees to address violations suffered by other employees, as well as themselves. (*Ibid*.) In light of this distinction, the Supreme Court held that *Iskanian's* "principal rule" prohibiting "wholesale" waivers of all PAGA claims was not preempted by the FAA. (*Id*. at pp. 1925-1926.)

However, the "secondary rule" of *Iskanian*, prohibiting the separation of individual and non-individual PAGA claims, was preempted by the FAA. (*Id*. at p. 1925.) As the Court explained, *Iskanian*'s "prohibition on contractual division of PAGA actions into constituent claims unduly circumscribes the freedom of parties to determine 'the issues subject to arbitration' and 'the rules by which they will arbitrate,' [citation], and does so in a way that violates the fundamental principle that 'arbitration is a matter of consent,' [citation]." (*Id*. at p. 1923.) Accordingly, an arbitration agreement compelling individual claims to arbitration was enforceable as to the individual portion of a PAGA claim. (*Id*. at pp. 1924–1925 ["Viking was entitled to enforce the agreement insofar as it mandated arbitration of Moriana's individual PAGA claim."].)

The *Viking River* court then dismissed the plaintiff's non-individual PAGA claims, reasoning that "PAGA provides no mechanism to enable a court to adjudicate non-individual PAGA claims once an individual claim has been committed to a separate proceeding." (*Viking River, supra,* at p. 1925.) The Court continued, "When an employee's own dispute is pared away from a PAGA action, the employee is no different from a member of the general public, and PAGA does not allow such persons to maintain suit. See *Kim*, 9

Cal.5th at 90 ('PAGA's standing requirement was meant to be a departure from the "general public" . . . standing originally allowed' under other California statutes).  As a result, [the plaintiff] lacks statutory standing to continue to maintain her non-individual claims in court, and the correct course is to dismiss her remaining claims." (*Ibid.*)

## II.    *Analysis*

### A.    **Individual PAGA claim**

In light of *Viking River*, we first assess the portion of Lyft's motion to compel arbitration of Seifu's individual PAGA claim.  The PAGA waiver in the TOS contained two parts.  First, the agreement waived the parties' right to bring PAGA claims "on behalf of others" in "any court or in arbitration." Second, the agreement required any individual PAGA claims to be resolved in arbitration.  For the purposes of the current appeal, the parties do not dispute that the first clause, constituting a wholesale waiver of Seifu's right to bring non-individual PAGA claims in any forum, was unenforceable under *Iskanian. (Iskanian, supra*, 59 Cal.4th at p. 360 ["an arbitration agreement requiring an employee as a condition of employment to give up the right to bring representative PAGA actions in any forum is contrary to public policy"].)  Nor do they dispute that *Viking River* left intact the portion of *Iskanian*'s rule "prevent[ing] parties from waiving representative standing to bring PAGA claims in a judicial or arbitral forum." (*Viking River, supra*, 142 S.Ct. at pp. 1916, 1924-1925, italics omitted.)  As such, the first part of the PAGA waiver here is unenforceable under *Iskanian* and cannot bar Seifu from bringing non-individual PAGA claims.

In addition, Seifu does not dispute that *Viking River* allows division of his PAGA claim into individual and non-individual claims.  Under the second clause in the PAGA waiver, Seifu concedes that he must submit his individual PAGA claim to arbitration.

### B.    **Non-individual PAGA claims**

We now turn to the question of what becomes of Seifu's non-individual PAGA claims, as they are not subject to arbitration.  Seifu contends that he maintains standing to pursue those claims in court.  Lyft asserts that *Viking River* compels the dismissal of the non-individual claims.  As we explain, we agree with Seifu.

As an initial matter, we note that we are not bound by the United States Supreme Court's interpretation of California law. (See *Nunez v. Nevell Group, Inc.* (2019) 35 Cal.App.5th 838, 847–848 ["Federal decisional authority does not bind the California Courts of Appeal on matters of state law."]; *Haynes v. EMC Mortg. Corp.* (2012) 205 Cal.App.4th 329, 335 [same]; *Howard Contracting, Inc. v. G.A. MacDonald Construction Co.* (1998) 71 Cal.App.4th 38, 52 ["[F]ederal decisional authority is neither binding nor controlling in matters involving state law"].) Indeed, in her concurrence in *Viking River*, Justice Sotomayor noted that she was joining in the Court's opinion with the understanding that "if this Court's understanding of state law is wrong, California courts . . . will have the last word" regarding a plaintiff's standing under PAGA. (*Viking River, supra*, 142 S.Ct. at p. 1925 [Sotomayor, J., concurring].) As such, we are not required to follow the Court's interpretation of PAGA and its standing requirements in *Viking River*.[3]

We are not persuaded otherwise by Lyft's contention that the *Viking River* court's dismissal of the plaintiff's non-individual PAGA claims for lack of standing was part of a "federal rule of decision to implement its mandate that the FAA applies to PAGA claims when a valid arbitration agreement exists." Lyft's attempt to fold the Supreme Court's interpretation of standing requirements under PAGA, a state statute, into its federal preemption analysis is unavailing, particularly where the Court interpreted *Kim* and other California authority to reach its conclusion as to standing. By contrast, in *New York Times Co. v. Sullivan* (1964) 376 U.S. 254, the case relied upon by Lyft, the Court expressly announced a "federal rule" after finding that the standard of proof for libel under the relevant state law was constitutionally

---

[3]     The California Supreme Court has yet to decide the issue. The court recently granted review in *Adolph v. Uber Technologies, Inc.*, review granted July 20, 2022, S274671, to consider "[w]hether an aggrieved employee who has been compelled to arbitrate claims under [PAGA] that are 'premised on Labor Code violations actually sustained by' the aggrieved employee [citations] maintains statutory standing to pursue 'PAGA claims arising out of events involving other employees' [citation] in court or in any other forum the parties agree is suitable."

deficient. (*Id*. at pp. 279, 283.) Lyft has identified no such constitutional concerns here.

We therefore independently assess the standing requirements for Seifu to continue to pursue his non-individual PAGA claim in court. As discussed above, PAGA provides that civil penalties recoverable by the state for Labor Code violations "may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees." (§ 2699, subd. (a).) Our Supreme Court interpreted the plain language of PAGA to include "only two requirements for PAGA standing. The plaintiff must be an aggrieved employee, that is, someone 'who was employed by the alleged violator' and 'against whom one or more of the alleged violations was committed.'" (*Kim, supra*, 9 Cal.5th at pp. 83-84.) "Considering the remedial nature of legislation meant to protect employees, we construe PAGA's provisions broadly, in favor of this protection." (*Id*. at p. 83, citations omitted.)

In *Kim*, the plaintiff alleged claims for damages based on his employer's Labor Code violations, as well as a claim for civil penalties under PAGA. (*Kim, supra*, 9 Cal.5th at p. 82.) After the plaintiff settled his non-PAGA claims for individual relief, the defendant argued that the plaintiff lost standing to pursue the remaining PAGA claim because he had received redress for his own injuries and was therefore no longer "aggrieved" within the meaning of the statute. (*Id*. at p. 84.) The California Supreme Court rejected this argument, finding that "Kim became an aggrieved employee, and had PAGA standing, when one or more Labor Code violations were committed against him. (See § 2699(c).) Settlement did not nullify these violations." (*Ibid*.)

The court continued, "An employee has PAGA standing if 'one or more of the alleged violations was committed' against him. (§ 2699(c).) This language indicates that PAGA standing is not inextricably linked to the plaintiff's own injury. Employees who were subjected to at least one unlawful practice have standing to serve as PAGA representatives even if they did not personally experience each and every alleged violation. (§ 2699(c).) This expansive approach to standing serves the state's interest in vigorous

enforcement." (*Kim, supra*, 9 Cal.5th at p. 85, citing *Arias, supra*, 46 Cal.4th at pp. 980-981.)

We conclude that Seifu has satisfied the standing requirements under *Kim* to maintain his non-individual PAGA claims at this stage of the proceedings. Seifu's operative complaint alleged that he was employed by Lyft and that one or more of Lyft's alleged Labor Code violations was committed against him. He is therefore an "aggrieved" employee within the meaning of PAGA with standing to assert PAGA claims on behalf of himself and other employees. (See *Kim, supra*, 9 Cal.5th at pp. 84-85.)

Further, the requirement that Seifu resolve his individual PAGA claim in a different forum—arbitration—does not strip him of this standing. (See *Kim*, *supra*, 9 Cal.5th at p. 84; see also *Johnson v. Maxim Healthcare Services, Inc.* (2021) 66 Cal.App.5th 924, 930 (*Johnson*) [the fact that the plaintiff's individual claim was time-barred did not "strip [the plaintiff] of her standing to pursue PAGA remedies"].) This interpretation is consistent with PAGA's remedial purpose, because revoking an employee's standing to pursue non-individual claims would "'severely curtail[ ] PAGA's availability to police Labor Code violations.'" (*Johnson, supra,* 66 Cal.App.5th at p. 930, quoting *Kim, supra*, 9 Cal.5th at pp. 86–87; see also *Viking River, supra*, 142 S.Ct. at p. 1919, fn. omitted ["An arbitration agreement thus does not alter or abridge substantive rights; it merely changes how those rights will be processed. And so we have said that "'[b]y agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral . . . forum.'"'"].)

We reject Lyft's contention that, even apart from statutory standing, PAGA requires that "the non-individual PAGA claims must be adjudicated together with individual PAGA claims, or not at all." The language of the statute contains no such requirement. "'"Where the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history."'" (*Kim, supra*, 9 Cal.5th at p. 85, quoting *Ennabe v. Manosa* (2014) 58 Cal.4th 697, 719.) Similarly, the cases Lyft cites simply reiterate the principle that a "plaintiff asserting a PAGA claim may not bring the claim simply on his or her own behalf but must bring it as a representative action and include 'other

current or former employees.'" (*Reyes v. Macy's, Inc.* (2011) 202 Cal.App.4th 1119, 1123; see also *Huff v. Securitas Security Services USA, Inc.* (2018) 23 Cal.App.5th 745, 756 ["an employee seeking to recover Labor Code penalties [under PAGA] cannot do so in a purely individual capacity; the employee must bring the action on behalf of himself or herself and others"].)  Seifu satisfied this requirement when he alleged his PAGA claim on behalf of himself and other employees.

Lyft's reliance on *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725 (*Morehart*) is similarly unavailing.   Lyft contends that sending the individual PAGA claim to arbitration "amounts to a form of severance that yields two distinct actions in two distinct fora," thereby ending Seifu's standing to represent non-individual PAGA claims in court.  *Morehart* involved an analysis of whether a judgment was appealable when it did not resolve all of the plaintiff's causes of action, but the appellant nevertheless contended that the appealable claims had been severed from those still pending.  (*Morehart*, *supra*, 7 Cal.4th at pp. 731-732.)  *Morehart* did not assess or apply severance principles to issues of standing or arbitration of PAGA claims.  (*Ibid.*)

Finally, Lyft contends that if Seifu's non-individual PAGA claims are not dismissed, they should be stayed pending the arbitration of the individual PAGA claims.  Lyft urges us to direct the trial court to impose a stay pursuant to Code of Civil Procedure section 1281.4, which provides that where the court orders arbitration "of a controversy which is an issue involved in an action or proceeding pending before a court of this State," the court in which the action or proceeding is pending "shall, upon motion of a party . . ., stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies."

Here, the trial court has not had the opportunity to rule on Lyft's stay request, because it denied Lyft's motion to compel arbitration outright.  We therefore remand the matter for the trial court to determine in the first instance whether a stay of Seifu's non-individual PAGA claims would be appropriate under the circumstances.

## DISPOSITION

12

The order denying Lyft's motion to compel arbitration is reversed in part and affirmed in part. The order is reversed as to Seifu's individual PAGA claim. The order is affirmed as to Seifu's non-individual PAGA claims. The matter is remanded with directions to the trial court to enter a new order requiring Seifu to arbitrate his individual PAGA claim and for further proceedings regarding Seifu's non-individual PAGA claims consistent with this opinion. The parties are to bear their own costs on appeal.

**CERTIFIED FOR PUBLICATION**


COLLINS, J.


We concur:


CURREY, ACTING, P.J.


STONE, J. *

---

\*     Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.